J-A24024-23

2024 PA Super 42

| OSCAR AMILCAR CASTILLO | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIA CANDELARIA GUERRA | : | No. 1579 EDA 2023 |

Appeal from the Order Entered May 18, 2023
In the Court of Common Pleas of Delaware County Civil Division at
No(s): 2023-1210

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

OPINION BY DUBOW, J.:                    **FILED MARCH 8, 2024**

Appellant, Oscar Amilcar Castillo ("Uncle"), appeals from the May 18, 2023 Order entered in the Court of Common Pleas of Delaware County that denied his petition seeking the issuance of an order containing specific factual findings regarding his nephew, now-19-year-old A.J.P.A. ("Nephew"), necessary to petition the U.S. Citizenship and Immigration Services ("USCIS") for special immigration juvenile status ("SIJS") pursuant to 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11. Upon review, we affirm.

In September 2022, then-17-year-old Nephew left his home country of Honduras and hitchhiked to the U.S. Upon arrival, Nephew was taken into custody of the U.S. Department of Health and Human Services Office of Refugee Resettlement ("ORR"). On November 12, 2022, ORR released Nephew into Uncle's custody.

On February 13, 2023, Uncle filed an emergency complaint for custody of Nephew and a request for special relief in the form of factual findings as a requisite predicate to Nephew's federal SIJS petition. On April 5, 2023, the trial court issued an Order adopting a written custody agreement between Uncle and Mother, who lives in Honduras, which granted Uncle legal and physical custody of Nephew. On April 7, 2023, Nephew turned 18 years old. On April 13, 2023, the trial court held a hearing on Uncle's petitions and heard testimony from Uncle, Nephew, and Mother.

On May 18, 2023, the trial court denied Uncle's emergency request for custody as moot,[1] denied Uncle's request for a SIJS predicate order, and issued findings of fact and conclusions of law. The trial court found that Uncle and Nephew sought the custody order for the sole purpose of requesting SIJS, in contradiction to the federal government's directive condoning such actions. Trial Ct. Op., 5/12/23, at 18. The trial court further found that the record did not definitively support a conclusion that it was in Nephew's best interest to stay in the U.S. rather than return to Honduras, absent credible and unbiased evidence regarding the "overall demographics of Honduras." *Id.*

Uncle timely appealed. Both Uncle and the trial court complied with Pa.R.A.P. 1925.

Uncle raises the following issues for our review:

_____

[1] The trial court denied Uncle's emergency custody request as moot because Nephew had turned 18 years old, and the court had previously accepted a custody agreement concerning Nephew.

- 2 -

I. In light of the trial court's finding that the testimony presented was credible, did the [t]rial court abuse its discretion or commit and error of law when it denied [Uncle]'s request for a finding that reunification of [Nephew] with [Nephew]'s mother is not viable due to serious physical neglect where, *inter alia*, the testimony established that [Nephew] often when hungry in his mother's care and started working in agriculture at the age of seven to help support himself.

II. Did the [t]rial [c]ourt abuse its discretion when it denied [Uncle]'s request for a finding that reunification of [Nephew] with [Nephew]'s father is not viable due to abandonment where, *inter alia*, the credible testimony established that [Nephew]'s father left when Child was too young to remember, never provided support, and no one has seen him since?

III. Did the [t]rial court abuse its discretion when it denied [Uncle]'s request for a finding that it is not in [Nephew]'s best interest to return to Honduras, where his basic physical and educational needs were not being met?

Uncle's Br. at 5-6.

**A.**

Underlying each of Appellant's issues is the federal immigration statute noted above. We, thus, begin our analysis mindful that, when interpreting a federal statute, this Court applies the following principles:

The construction of a federal statute is a matter of federal law. Under federal rules of statutory construction, in determining the meaning of a federal statute, the courts look not only to particular statutory language, but also to the design of the statute as a whole and to its purposes. Furthermore, when the courts confront circumstances not plainly covered by the terms of a statute, suggesting that Congress did not contemplate the issue, they endeavor to give statutory language the meaning that advances the policies underlying the legislation.

- 3 -

*Velasquez v. Miranda*, 297 A.3d 837, 843 (Pa. Super. 2023), *appeal granted*, _____ Pa. _____, 2023 WL 8181188 (Pa. Nov. 27, 2023) (citations omitted).

The relevant federal statute provides that SIJS is available to foreign children in the United States who have been "declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, [or] abandonment[.]"  8 U.S.C. § 1101(a)(27)(J)(i).  Moreover, a court must determine that "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence."  *Id.* at 1101(a)(27)(J)(ii).  "To obtain SIJS, a child must first apply to a state court for an order finding that he or she meets the statutory and regulatory requirements."  *Velasquez*, 297 A.3d at 845.

To qualify for SIJS, applicants must be physically present in the United States, unmarried, under the age of twenty-one, and must be the subject of a juvenile court order.  8 C.F.R. § 204.11(b)(1-4).  As it relates to this appeal, the state juvenile court order must have (1) "placed the petitioner under the custody of . . . an individual or entity appointed by a State or juvenile court[,]" (2) "made a judicial determination that parental reunification with one or both parents is not viable to due abuse, neglect, abandonment, or a similar basis

under State law[,]" (3) made a judicial determination that "it would not be in petitioner's best interest to be returned to the petitioner's or their parent's country of nationality or last habitual residence." *Id.* at § 204.11(c)(1-2).

"With that order in hand, applicants must then file an application with USCIS, along with sufficient evidence to establish eligibility and the associated filing fee. The Secretary of Homeland Security must also consent to the grant of SIJ status, which functions as an acknowledgement that the request for SIJ classification is bona fide—that is, that the benefit is sought primarily for the purpose of obtaining relief from abuse or neglect or abandonment." *Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 170 (3d Cir. 2018) (citations and quotation marks omitted).

**B.**

In his issues before this Court, Uncle avers that, by declining to find that Nephew's mother neglected Nephew, Nephew's father abandoned him, and that remaining in the U.S. was in Nephew's best interest, the trial court erred in denying Uncle's request for a SIJS predicate order. Uncle's Br. at 5-6.

In its Rule 1925(a) Opinion, the trial court opines that Nephew simply does not meet the eligibility requirements for an SIJS predicate order. Trial Ct. Op., 8/3/23, at 10. In doing so, the court emphasizes the following:

> Significantly, [Nephew] has not been adjudicated dependent or placed in the legal custody of a state agency, rather [Nephew] resides with his Uncle. Thus, Uncle focuses on only part of the relevant statutory and regulatory federal language at issue (concerning whether reunification with one or both parents is viable and whether it would not be in [] child's best interest to return to [Honduras]), but he ignores the eligibility requirements

- 5 -

that [Nephew] must be adjudicated dependent or under the custody of a state agency or individual or entity appointed by the state or juvenile court. On this record, [Nephew] is simply ineligible at this juncture for SIJS.

*Id.* We agree.

As explained above, the relevant federal law contemplates an award of SIJS only where the child or children have been adjudicated dependent or the child or children have been legally committed to the custody of a state agency or an individual or entity **appointed** by the state or juvenile court. ***See*** 8 U.S.C. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(b)(4), (c)(1)(i)(A-B). ***See also Velasquez***, 297 A.2d at 847.

Here, Nephew is not legally committed to the custody of an individual or entity **appointed** by the state or juvenile court. Rather, as the trial court indicates, the record makes clear that the trial court did not appoint Uncle to serve as Nephew's legal custodian; rather, Nephew resides with Uncle per a custody agreement between Uncle and Nephew's mother. ***Compare*** Pa.R.C.P. 1915.7 (regarding custody consent orders) ***with*** 23 Pa.C.S. § 5323 (authorizing the court to award any form of custody after considering the Section 5328 custody factors) ***and id.*** at § 5328 (describing the custody factors a court must consider before awarding custody).

Our review supports the trial court's finding that Nephew does not qualify for SIJS. Accordingly, we decline to find that that the trial court erred when it denied Uncle's request for an SIJS predicate order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/8/2024