J-S15043-26

2026 PA Super 131

| | | |
|---|---|---|
| OSCAR AMILCAR CASTILLO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIA CANDELARIA ARITA GUERRA | : | No. 2618 EDA 2025 |

Appeal from the Order Entered September 12, 2025
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2023-001210

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED JUNE 18, 2026**

Appellant, Oscar Amilcar Castillo ("Uncle"), appeals from the order entered in the Delaware County Court of Common Pleas on September 12, 2025, denying Appellant's request for special relief in the form of factual findings predicate to United States Citizenship and Services' Special Immigrant Juvenile Status (SIJS) determination for his Nephew. After careful review, we affirm.

The procedural history of this case spans several years as this case has been addressed previously by this Court and by the Pennsylvania Supreme Court. The relevant facts are as follows:

> In September 2022, then-17-year-old Nephew left his home country of Honduras and hitchhiked to the U.S. Upon arrival, Nephew was taken into custody of the U.S. Department of Health

_____

[*] Former Justice specially assigned to the Superior Court.

and Human Services Office of Refugee Resettlement ("ORR"). On November 12, 2022, ORR released Nephew into Uncle's custody.

On February 13, 2023, Uncle filed an emergency complaint for custody of Nephew and a request for special relief in the form of factual findings as a requisite predicate to Nephew's federal SIJS petition. On April 5, 2023, the trial court issued an Order adopting a written custody agreement between Uncle and Mother, who lives in Honduras, which granted Uncle legal and physical custody of Nephew. On April 7, 2023, Nephew turned 18 years old. On April 13, 2023, the trial court held a hearing on Uncle's petitions and heard testimony from Uncle, Nephew, and Mother.

On May 18, 2023, the trial court denied Uncle's emergency request for custody as moot [because Nephew had turned eighteen years old], denied Uncle's request for a SIJS predicate order, and issued findings of fact and conclusions of law. The trial court found that Uncle and Nephew sought the custody order for the sole purpose of requesting SIJS, in contradiction to the federal government's directive condoning such actions. The trial court further found that the record did not definitively support a conclusion that it was in Nephew's best interest to stay in the U.S. rather than return to Honduras, absent credible and unbiased evidence regarding the "overall demographics of Honduras." Uncle timely appealed.

*Castillo v. Guerra*, 312 A.3d 341, 342-43 (Pa. Super. 2024) (vacated) (internal citations omitted).

On appeal, this Court opined that the relevant federal law contemplates an award of SIJS only where a child is adjudicated dependent or is legally committed to the custody of a state agency or an individual or entity appointed by the state or juvenile court. *Id.* at 344. Finding that Nephew resides with Uncle pursuant to a custody agreement between Mother and Uncle as opposed to having been appointed by a state or juvenile court, we held that Nephew was unqualified for SIJS. *Id.* at 345.

On December 6, 2024, the Pennsylvania Supreme Court granted Appellant's Petition for Allowance of Appeal, vacated this Court's March 2024 decision, and remanded the case to this Court for reconsideration in light of the Supreme Court's recent decision in *Velasquez v. Miranda*, 321 A.3d 876 (Pa. 2024).

In *Velasquez*, the Supreme Court, *inter alia*, reversed the Superior Court's prior *Velasquez* decision which interpreted SIJS provisions as precluding someone who is awarded custody of a child in a custody proceeding to be someone "appointed by" state or juvenile court. Because the trial court in Uncle's case relied on this Court's earlier *Velasquez* decision which, at the time of the first appeal in this matter had not yet been reversed by the Supreme Court, we remanded to the trial court on March 26, 2025. Recognizing that the trial court made factual findings which might serve as a basis for the denial of SIJS on their own accord, we vacated the trial court's order and remanded for the court to reconsider its ruling which was, in part, contrary to the Supreme Court's *Valesquez* decision. *Castillo v. Guerra*, 336 A.3d 1016 (Pa. Super. 2025).

The trial court held a hearing on August 11, 2025 and entered thorough Findings of Fact and Conclusions of Law on September 15, 2025, again denying Uncle's request for specific findings and an SIJS order. The findings included the following:

> Nephew testified that he grew up in a small village in Honduras, a half an hour away from Copan, with a population of

roughly 150 people. Nephew lived in a one-bedroom small home with his mother and three sisters. His father left when he was 1.5 years of age and never provided any support. Nephew has some connection to his father's side of the family, just not his father. Though there wasn't always enough to eat, Nephew's mother was able to maintain routine medical and dental care for him and his siblings. Nephew stopped attending school, after the 6th grade, because his mother was not able to pay for him to continue attending. Thus, Nephew worked in agriculture, in lieu of going to school, to help support his family. Nephew believes that he actually began working in agriculture at the age of seven (7).

A little under seven (7) months from his eighteenth birthday, Nephew decided to leave Honduras. A decision, he testified, he made on his own. He traveled through Guatemala to get to Mexico, either walking or hitching a ride, before arriving in the United States. It took him roughly fifteen days to make the journey. His Mother/Defendant, Maria Candelaria Arita Guerra (hereinafter "Mother" and/or "Defendant"), remains in Honduras along with his sisters, aged 15, 5, and 3, at the time of the April 13, 2023 trial. Nephew's mother works in agriculture and his siblings are all in school.

Nephew testified that he had been with his uncle for six months, by the time of trial, and life is much better. He now has enough to eat and feels safe. Nephew's uncle is able to provide Nephew with his daily needs. Nephew did not testify that his Mother ever physically abused him. The only testimony regarding abuse was the written testimony submitted by Uncle, which argues that Mother subjected Nephew to serious physical neglect, as defined by 23 Pa.C.S.A. § 6303(a). Uncle argues that Mother's inability to provide "adequate essentials of life", as a single mother in Honduras, "endangered Nephew's health, threatened his well-being and impaired his development." Nephew testified that he feels safe with Uncle, yet there was no testimony as to why he may not have been "safe" with Mother in Honduras. The court recognizes that with his mother Nephew may not have had access to many resources, food included, however minimal resources does not necessarily equate to an environment being unsafe nor does it automatically necessitate the need to remove a seventeen-year-old child from their home with their Mother.

Having observed the testimony and demeanor of both witnesses, the court did find their testimony to be credible. Mother

appears to have raised her children the best she could under limited financial circumstances. There was no physical abuse in the home, nor was there allegations of any drug or alcohol abuse. In the United States, those set of circumstances tend to lend an individual to qualify for local, state, and perhaps federal financial assistance. This kind of governmental assistance may not be readily available in other countries. However, this court would not deem a parent's unintentional inability to "adequately" provide sustenance for their children as "abuse". What may be deemed neglectful would be a parent's failure to seek services that may assist them in providing for their children. There was no other testimony surrounding Mother's effort to provide for her children, other than the fact that she worked in agriculture. In addition, Nephew testified that though food was not always readily available, he did have access to medical and dental care. Rather, Nephew presents as a soft-spoken young adult, who traveled to the United States for a better opportunity. Both Nephew and Uncle's testimony appeared guided by their motivation to provide testimony that satisfies the requirements necessary to qualify for SIJS.

Findings of Fact, 9/15/25, at 3-4.

Regarding the ability of Nephew to reunify with his mother and the best interest analysis, the court made the following conclusions:

Additionally, the record in this matter does not support a conclusion that it is in the best interest of Nephew to issue a SIJ order. First, Nephew was "placed under" the custody of his uncle merely by operation of law. Uncle and Nephew's mother entered into a custody stipulation, which was simply signed off-on as an agreement the [c]ourt would recognize as an Order as if issued by the court itself. Thus, there was no case in controversy which required judicial intervention and decision-making.

Secondly, this [c]ourt finds that Nephew can be reunified with Mother, who remains in Honduras and is presently caring for Nephew's younger siblings. Nephew testified that he and his Mother discussed him leaving Honduras for America. Thus, this [c]ourt believes that there may be other economic reasons for Nephew's desire to come to the United States, rather than the stated reasons of alleged neglect by Mother and abandonment by Father. It was mentioned that Nephew ceased attending school in

Honduras, due to financial constraints. Yet, when inquired into by the Court, Nephew did not seek to enroll in school, while still a minor and under Uncle's care either. It seemingly appears that Nephew is in the same circumstances, with Uncle, as he was with Mother in Honduras.

Last, Nephew lived practically all of his "minor" life in Honduras, entering the United States only a few months shy of becoming an adult in Pennsylvania. While Nephew may have experienced challenges economically, the record also indicates that safe and stable care is available for him in Honduras. Specifically, his Mother continues to work and provide care to his younger siblings. Moreover, there was a lack of credible evidence showing that a return to Honduras would pose harm or be against his best interest. Presumably Nephew has more ties to Honduras than he has in the United States. Given these circumstances, the evidence does not support and therefore this [c]ourt could not find that it would be contrary to Nephew's, now an adult pursuant 23 Pa.C.S.A. §5402, best interest to be returned to Honduras.

Findings of Fact, 9/15/25, 7-8.

Appellant filed a timely notice of appeal and complied with Pa.R.A.P. 1925(b) on October 8, 2025. The trial court filed a Rule 1925(a) opinion on November 17, 2025. This appeal followed.

Appellant raises the following four issues for our review, verbatim:

I. Did the Trial Court err as a matter of law and abuse its discretion by failing to find that reunification of [Nephew] with his father is not viable due to abandonment, where the unrebutted testimony established that the [Nephew]'s father left when the child was an infant and never provided care, supervision, or financial support?

II. Did the Trial Court abuse its discretion in failing to make findings related to the viability of reunification of [Nephew] with his father?

III. Did the Trial Court err as a matter of law in its best-interest analysis by failing to recognize that a best-interest determination had already been made pursuant to the custody stipulation and by alternatively failing to find that it is not in the [Nephew]'s best

interests to return to Honduras, where is basic physical needs were not being met?

IV. Did the Trial Court's reliance on a perceived immigration motive in refusing to make SIS determinations constitute legal error?[1]

Appellant's Br. at 5-6.

During the pendency of the appeal before this Court, Appellant filed an Application for Expedited Consideration on March 2, 2026, apprising this Court that Nephew would turn twenty-one years old on April 7, 2026, and another Application for Relief on March 25, 2026, advising that the appeal was at imminent risk of becoming moot.[2] Thereafter, Appellant filed an Application for Relief Regarding Post-Submission Status on April 22, 2026, advising this Court that Nephew has turned twenty-one years old.

Initially, we must decide if this case is moot. We commend counsel for Appellant on her candor in informing the Court of changed circumstances which may render the matter moot, and we appreciate her attempts at zealous

---

[1] Given the disposition of this matter as moot, we need not address this claim. However, we note that while the trial court surmised that Appellant sought legal and physical custody of Nephew solely for immigration purposes, this was not a basis for the court's denial of Appellant's request for SIJS findings. *See* Tr. Ct. Op. at 8; Findings of Fact, 9/15/25, at 7 (noting that the court is not tasked with considered this as a factor). Accordingly, the trial court did not run afoul of ***Orellana v. Chuva***, 353 A.3d 212 (Pa. Super. 2026) (holding that "[b]ecause neither our Supreme Court nor the federal statutes require a court to determine a petitioner's motivations in its delineation of the state court's role in the federal scheme, a petitioner's motivation is an inappropriate ground for a custody court to base its SIJS findings on.")

[2] One of the prerequisites of eligibility for SIJS is that the petitioner is under twenty-one at the time of filing the petition. 8 C.F.R. § 204.11(b)(1).

advocacy. Counsel respectfully informed this Court of the time-sensitive nature of this matter on several occasions. However, Pennsylvania law does not impose an obligation on a court to expedite proceedings, rearrange its schedule, or prioritize a matter merely to preserve a controversy from mootness. To the contrary, Pennsylvania appellate courts have repeatedly recognized that intervening events and the ordinary passage of time may moot a case during litigation, in which event dismissal is appropriate unless a recognized mootness exception applies. **See In re Cain**, 590 A.2d 291, 292 (Pa. 1991); **Commonwealth v. Sloan**, 907 A.2d 460, 465 (Pa. 2006).

> "Generally, an actual claim or controversy must be present at all stages of the judicial process for the case to be actionable or reviewable. . . . If events occur to eliminate the claim or controversy at any stage in the process, the case becomes moot." **J.S. v. Whetzel**, 2004 PA Super 406, 860 A.2d 1112, 1118 (Pa.Super. 2004) (quotation marks and citation omitted). "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." **In re Cain**, 590 A.2d 291, 292, 527 Pa. 260 ([Pa.] 1991). "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." **Rivera v. Pennsylvania Dept. of Corrections**, 2003 PA Super 447, 837 A.2d 525, 527 (Pa.Super. 2003).

**Deutsche Bank Nat. Co. v. Butler**, 868 A.2d 574, 577 (Pa. Super. 2005).

In the present case, counsel for Appellant informed this Court that prior to Nephew's twenty-first birthday, a petition for SIJS was timely filed with United States Citizenship and Immigration Services ("USCIS") in an effort to preserve eligibility while this appeal remained pending. That petition is still pending before USCIS. Application for Relief, 4/22/26, at ¶ 6. Appellant

recognizes that "it is not guaranteed that USCIS will accept or act upon a predicate order entered after the child's twenty-first birthday," but argues that an opinion by this Court ordering the trial court to enter the requisite findings would permit Appellant to supplement the pending federal petition with the same. *Id.* at ¶ 7.

We find this case to be moot because the trial court entering predicate findings will have no legal force or effect because it cannot be submitted to USCIS prior to Nephew's twenty-first birthday as required by 8 C.F.R. § 204.11(b)(4) and (c), because Nephew is over the age of twenty-one. Accordingly, we must decide if an exception applies.

"An exception to mootness will be found where (1) the conduct complained of is capable of repetition yet likely to evade judicial review; (2) the case involves issues of great public importance; or (3) one party will suffer a detriment in the absence of a court determination." *Mistich v. Commonwealth*, 863 A.2d 116, 119 (Pa. Commw. Ct. 2004)

Appellant argues that review is warranted under the exception to the mootness doctrine permitting consideration where a party to the controversy will suffer a continuing detriment from the trial court's decision. *Id.* at ¶ 12. Appellant states:

> although the child has now reached the age of twenty-one, the trial court's denial of SIJS predicate findings continues to impose concrete and ongoing consequences. Without such findings, the pending SIJS petition cannot be supported, thereby foreclosing a potential pathway to lawful immigration status and exposing [Nephew] to adverse immigration consequences. Thus, dismissal

of this appeal as moot would effectively foreclose any opportunity to obtain relief tied to a petition that was timely filed, resulting in a continuing and substantial detriment flowing directly from the trial court's decision.

*Id.* at ¶ 14.

In regard to this mootness exception, "[a] 'party to a controversy' means the actual litigants who take part in the suit, not merely interested persons who may, as a consequence, be affected by the suit." ***Cty. Council of Cty. of Erie v. Cty. Exec. of Cty. of Erie***, 600 A.2d 257, 260 (Pa. Commw. Ct. 1991) (citing ***Commonwealth v. Smith***, 486 A.2d 445 (Pa. Super. 1984)).

As set forth in Black's Law Dictionary, "'[p]arty' is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought . . . the party plaintiff or defendant . . ."

***Browning-Ferris, Inc. v. Dep't of Envtl. Res.***, 598 A.2d 1057, 1060 (Pa. Commw. Ct. 1991) (expanding the definition of "party" only in the context of interveners to a lawsuit).

For example, in ***Erie***, a county executive unilaterally, and without a performance review or approval from the county council, increased a county director's work hours, thereby increasing the director's salary and benefits. ***Erie***, 600 A.2d at 258. The counsel brought suit to have the executive's action declared null and void. ***Id***. The director thereafter retired and the suit was rendered moot. On appeal, the council argued the mootness exception that there was ongoing detriment to the taxpayers because the retired director was

receiving enhanced retirement benefits. ***Id.*** at 260. The Commonwealth Court found that the exception could not apply because "the taxpayers of Erie County, although they may [have been] interested, have never been a party to the present controversary[.]" ***Id***.

In custody matters, while the subject child certainly has an interest in the outcome of the proceeding, he is not a party to the matter. ***See Frank v. Frank***, 833 A.2d 194, 197 (Pa. Super. 2003). Here, the parties to this instant action are Nephew's Mother and Uncle. Accordingly, the argument that Nephew will suffer a detriment fails because the mootness exception is not applicable to a non-party litigant.

Even if this case was not rendered moot, we would find that the trial court made factual findings which properly serve as a basis for the denial of SIJS.

> a state court presented with a request . . . for SIJ judicial determinations pertaining to her minor children is expressly authorized by federal law to issue the SIJ order when:
>
>> (1) The court has exercised its jurisdiction as authorized by Pennsylvania law to determine the dependency and/or custody and care of a child;
>>
>> (2) Reunification with one or both of the child's parents is not viable due to abuse, abandonment, neglect, or a similar basis under Pennsylvania law; and
>>
>> (3) It is not in the child's best interest to be returned to the child's or their parent's country of nationality or last habitual residence.

***Velasquez v. Miranda***, 321 A.3d 876, 895 (Pa. 2024).

- 11 -

Here, we agree that the Court of Common Pleas of Delaware County has the authority to issue an order with the judicial determination because it is a juvenile court with jurisdiction to make custody decisions. **See id.** at 898. Regarding reunification with Nephew's parents, the trial court points out that Pa.R.C.P. 1915.6 requires that if the court learns of a parent whose parental rights have not been previously terminated and who was not named as a party to the action, the court shall order that the person be joined as a party. Such persons shall be served with a copy of all prior pleadings and notice of the joinder. Tr. Ct. Op. at 5; Pa.R.C.P. 1915.6(a). This Court recognizes that the trial court is not required to terminate parental rights to determine that parental reunification is not viable. **Velasquez v. Miranda**, 321 A.3d 876, 894 (Pa. 2024) (citing C.F.R. § 204.11(c)(1)(ii). However, despite testimony that Nephew's father has not been a part of Nephew's life, the trial court relevantly points out that there is no documentation that father's rights have been previously terminated, there is no affidavit of service for Nephew's father, and there is no information in the record as to whether or not Nephew's father is even aware of these custody proceedings.

Regarding Nephew's Mother, despite allegations of "abuse and neglect," we find that the circumstances in this case are not similar to the basis contemplated by Pennsylvania law or federal immigration law. Appellant lived with his Mother in Honduras, albeit in poverty, for almost his entire life before deciding to travel to the United States. Appellant's Br. at 11. At seventeen

years old, Nephew left Honduras and crossed the border into the United States after walking and hitchhiking. N.T., 4/13/23, at R.R. 55. He made the decision to do this after discussing it with his Mother, who allowed it. *Id*. He eventually began living with Appellant who filed for custody. Mother and Appellant entered a stipulation agreeing that Appellant would have legal and physical custody, but Mother still communicates with Nephew. *See* Stipulation 3/27/23, at 1-2. Mother chose not to contest this action. This is not the type of situation where courts find reunification to be impossible.

Additionally, the trial court found the following:

[Nephew] Did not testify that his mother ever physically abused him. The only testimony regarding abuse was the written testimony submitted by Uncle, which argues that Mother subjected [Nephew] to serious physical neglect, as defined by 23 Pa.C.S.A. § 6303(a). Uncle argues that mother's inability to provide "adequate essentials of life" as a single mother in Honduras "endangered [Nephew]'s health, threatened his well-being and impaired his development." . . . There was never physical abuse in the home, nor was there allegations of any drug or alcohol abuse. . . . This court would not deem a parent's unintentional inability to "adequately" provide sustenance for their children as "abuse."

Tr. Ct. Op. at 7, 8.

We agree. Pennsylvania courts recognize that poverty alone does not constitute child abuse or neglect. *See Stapleton v. Dauphin County Child Care Service*, 324 A.2d 562, 570 (Pa. Super. 1974) (overruled on other grounds) ("A child cannot be declared 'neglected' merely because his condition might be improved by changing his parents. . . .The Juvenile Court Law was not intended to provide a procedure to take the children of the poor and give

- 13 -

them to the rich[.]"). Courts distinguish between intentional deprivation and financial hardship where a parent is making genuine efforts to provide care. Likewise, in **In re V.M.T.**, 318 A.3d 1289, 2024 WL 1855125 at*18-19 (Pa. Super. 2024) (unpublished)[3] this Court affirmed an orphan's court finding that there was no "abuse, abandonment, [or] neglect" despite the child's parents, who lived in Guatemala, having "little income," where the parents nevertheless provided "adequate essentials of life." **Id**. Pennsylvania law therefore does not equate poverty, financial hardship, or lack of resources with abuse or intentional neglect. Here, the trial court found that Mother raised her children the best she could under limited financial circumstances, which does not support a finding of neglect or abuse. Tr. Ct. Op. at 7-8.

Finally, the trial court was unable to find that it was not in Nephew's best interest to be returned to his country of nationality or last habitual residence. Federal law is not to be "construed as altering the standards for best interest determinations that juvenile court judges routinely apply under relevant State law." 8 C.F.R. §204.11(c)(2)(ii). Here, the trial court found, *inter alia*, that while Nephew testified his education stopped at the age of twelve in Honduras, he has not sought to continue his education since being in the United States. Tr. Ct. Op. at 7. The court acknowledges that Nephew's Mother had little

---

[3] We note that, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. We find guidance in the unpublished memorandum cited **supra** and find it to be persuasive in this matter.

resources, but found that he had basic necessities like shelter and medical and dental care in Honduras. Presumably, Mother is in a better financial situation today than when Nephew was a child because he testified that she could not afford to send him to school beyond the age of twelve, but he also testified that his sister, who was fifteen years old and living with Mother at the time of the 2023 trial, was still attending school in Honduras at the age of fifteen. Additionally, there was no testimony regarding how much time Nephew and Appellant actually spent together before Nephew came to live with him, whereas Nephew lived with his Mother his entire life. *Id.* at 8.

Therefore, even if this matter was not deemed moot, we would find no reason to disturb the court's factual findings concerning Nephew's eligibility for SIJS. Accordingly, we affirm.

Order affirmed.

Judge Murray joins the Opinion.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/18/2026